UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELINO CERRO HUERTA,<br><br>        Petitioner,<br><br>    v.<br><br>PAMELA BONDI, et al.,<br><br>        Respondents. | Case No. 1:25-cv-00941-JLT-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 9)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART<br><br>(Doc. No. 1)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

      Petitioner Marcelino Cerro Huerta, an immigration detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the Mesa Verde Processing Center in Bakersfield, California, initiated this action by filing, with counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 1, "Petition"). The Petition raises the following claims for relief: (1) detention of Petitioner, as an alien who previously entered the country and has resided here prior to being apprehended and placed in removal proceedings, under 8 U.S.C. § 1225(b)(2)

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

instead of § 1226(a) is a violation of the Immigration and Naturalization Act ("INA"), and (2) Petitioner's continued detention in ICE custody without a bond hearing violates his Fifth Amendment due process rights. (*Id*. at 15-16). As relief, *inter alia*, Petitioner asks the Court to issue a writ of habeas corpus requiring that Respondents immediately release him, or in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) with seven (7) calendar days. (*Id*. at 16).

In response, Respondent filed a Motion to Dismiss ("Motion") arguing the Court should dismiss the Petition for failure to exhaust administrative remedies, or should the Court decline to waive exhaustion, deny the Petition because § 1225(b)(2) governs Petitioner's detention as an "applicant for admission." (Doc. No. 9). Petitioner filed an opposition to the Motion to Dismiss arguing exhaustion of administrative remedies would be futile and cause irreparable injury to Petitioner, and his mandatory detention under § 1225(b)(2) as opposed to § 1226(a) – which affords access to a bond hearing – is an erroneous application of the INA. (Doc. No. 10).

Significant to the consideration of the Petition is Petitioner's status as a Mexican citizen who entered the country without inspection and resided in the United States for more than 20 years before being apprehended and placed in standard removal proceedings under § 1229a. The undersigned recommends the district court deny Respondent's Motion to Dismiss and grant the Petition in part for the reasons set forth below.

## I.   BACKGROUND

Petitioner is a citizen of Mexico who entered the United States without inspection on or around April 2001. (Doc. No. 1 at 12). He has resided continuously in the United States for over 20 years, and he has had no contact with immigration authorities. (*Id*.). He has been married to his wife, who is also a citizen of Mexico, for 24 years and they have three children who were born in the United States: a 23-year-old son, an 18-year-old daughter, and a 10-year-old son. Petitioner has been charged with driving without a license and failure to obey a traffic device, but he has not been arrested or convicted of any crimes. (*Id*.; Doc. No. 1-3 at 19-22).

On or around June 6, 2025, Petitioner was detained by ICE after he was stopped for driving without a license, and he was subsequently transferred to the Folkston ICE Processing

Center in Folkston, Georgia. (Doc. No. 1-3 at 8-10; Doc. No. 9-1 at 3, Exh. 1). Petitioner was transferred to Mesa Verde Processing Center from the ICE Processing Center on or around June 15, 2025. (Doc. No. 1 at 12-13; Doc. No. 9-1 at 3, Exh. 2). On June 24, 2025, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection) and ordered Petitioner to appear before an Immigration Judge. (Doc. No. 9-1 at 3, Exh. 3). Petitioner requested a bond hearing before an Immigration Judge ("IJ"), and on July 14, 2025, the IJ issued a decision denying Petitioner's request for a change in custody status for lack of jurisdiction because Petitioner was deemed an "applicant for admission" and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (*Id*. at 3, Exhs. 4, 8).

Petitioner is currently detained in ICE custody under the mandatory detention provisions in § 235(b) of the INA and 8 U.S.C. 8 U.S.C. § 1225(b)(2)(A), and he is being held at the Mesa Verde Processing Facility in Bakersfield, California.

## II.   APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

**A. Jurisdiction**

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal

3

order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

**B. Exhaustion**

28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995) (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id*. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the Court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

Respondents contend that exhaustion is warranted because the Court would benefit from the BIA's expertise, requiring exhaustion is in the interest of judicial economy, and detention alone is insufficient to excuse exhaustion through a BIA appeal. (Doc. No. 9 at 4-6). Petitioner responds that the prudential exhaustion requirement should be waived because it would cause him irreparable injury, constitutional challenges to detention do not require exhaustion, and appeal to

4

the Board of Immigration Appeals ("BIA") would be futile. (Doc. No. 10 at 3-7). The Court joins the multitude of district courts to consider this issue recently in the context of habeas petitions filed by immigrant detainees and finds "pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens detained in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained." *Singh v. Andrews*, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025) (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025))[2]; *see also at Chavez v. Noem*, 2025 WL 2730228, at *3-4 (S.D. Cal. Sept. 24, 2025) (waiving exhaustion as futile because "the BIA has already applied its expertise in deciding and designating *Matter of Yajure Hurtado* as precedential. It therefore seems clear that anyone deemed inadmissible under § 1182(a)(6)(A)(i) (that is, '[a]n alien present in the United States without being admitted or paroled') will be subjected to mandatory detention without bond under § 1225(b)(2) upon BIA review.'); *Barco Mercado v. Francis*, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025) ("To force Mr. Barco to request a bond hearing from an immigration judge – which would be denied under the BIA's recent decision and, even if it were held, would result in release being denied under that decision – and then appeal that denial to the same BIA that has prevented immigration judges from hearing bond requests in the first place, all before allowing Mr. Barco to seek judicial review of his arrest and redetention, would be 'Kafkaesque.'"). Accordingly, the Court exercises its discretion to waive the prudential exhaustion requirement and will turn to the merits.

**C. Claim One: Violation of the INA**

Petitioner alleges that Respondents' interpretation of 8 U.S.C. § 1225(b)(2) as requiring mandatory detention of noncitizens, like him, who previously entered the country without inspection and have been residing in the United States for many years prior to being apprehended and placed in removal proceedings on the grounds of inadmissibility, is unlawful and a violation of the Immigration and Nationality Act ("INA"). (Doc. No. 1 at 15). Rather, Petitioner claims the applicable provision in his case is 8 U.S.C. § 1226(a), which allows for conditional release or

---

[2] Pursuant to Local Rule 230(m)(2), on September 10, 2025, Respondent submitted the *Matter of Yajure Hurtado* as supplemental authority that postdated the briefing. (Doc. No. 16).

5

bond, as opposed to 8 U.S.C. § 1225(b)(2)(A). Thus, the Court will briefly outline the statutory and legal framework of detention authority under the INA.

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)). Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). As relevant here, pursuant to § 1225(b)(2)(A), subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under 1229a of this title." § 1225(b)(2)(A) (emphasis added). "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Pursuant to § 1226(a) the

1    government has broad discretion whether to continue to detain the arrested alien or release the

2    alien on (A) bond of at least $1,500 … or (B) conditional parole. § 1226(a); *Rodriguez Diaz v.*

3    *Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE

4    officer makes the initial custody determination when a person is apprehended under § 1226(a)

5    and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such

6    release would not pose a danger to property or persons, and that the alien is likely to appear for

7    any future proceeding."). Section 1226 also provides that "a detainee may request a bond hearing

8    before an IJ at any time before a removal order becomes final," and may request an additional

9    bond hearing if he or she can demonstrate a material change in circumstances. *Id*. at 1197 (citing

10   8 C.F.R. § 236.1(d)(1), 1003.19(e))).

11          However, § 1226(c) "carves out a statutory category of aliens who may *not* be released

12   under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one

13   of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289

14   (emphasis in original). In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add

15   a new category of alien ineligible for release under § 1226(a), including aliens deemed

16   "inadmissible" for being "present in the United States without being admitted or paroled," who

17   have been arrested for, charged with, or convicted of certain crimes. LRA, Pub. L. No. 119-1

18   (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

19          "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of

20   detention to the vast majority of noncitizens allegedly in this country without valid

21   documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025);

22   *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025)

23   (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)

24   ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding

25   (almost three decades) practice of the agencies charged with interpreting and enforcing the INA

26   without inspection and were apprehended while present in the U.S. By contrast, those

27   apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v.*

28   *Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025) ("The longstanding practice of the

7

1  Executive branch agencies charged with interpreting and enforcing the INA considered
2  noncitizens like [petitioner] who had entered without inspection, and were apprehended while
3  residing in the United States, as subject to Section 1226(a)."). However, in July 2025, the
4  Department of Homeland Security ("DHS"), in conjunction with the Department of Justice
5  ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration
6  authority for an "applicant for admission" including an alien present in the United States "who
7  has not been admitted or who arrives in the United States, whether or not at a designated port of
8  arrival," and all applicants for admission are subject to mandatory detention under § 1225(b).
9  The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination
10 hearing ('bond hearing') before an immigration judge and may not be released for the duration of
11 their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now
12 treated in the same manner that 'arriving aliens' have historically been treated." *See ICE Memo:*
13 *Interim Guidance Regarding Detention Authority for Applications for Admission*, American
14 Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-
15 guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7,
16 2026). As noted above, in September 2025, the BIA issued a precedential decision adopting this
17 interpretation of the government's detention authority under the INA and holding that IJ's do not
18 have authority to hear bond requests or grant bond to aliens "who are present in the United States
19 without admission," because they are applicants for admission and subject to mandatory detention
20 under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.
21     Here, in keeping with these policy changes, Respondents contend that as an alien present
22 in the United States who has not been admitted, Petitioner is considered an "an applicant for
23 admission" as defined in § 1225(a)(1) and is therefore subject to the mandatory detention without
24 a bond hearing under § 1225(b)(2)(A). (Doc. No. 9 at 7-8). Petitioner alleges § 1225(b)(2)(A)
25 "does not apply to all noncitizens residing in the United States who are subject to the grounds of
26 inadmissibility. As relevant here, it does not apply to those who previously entered the country
27 and have been residing in the United States prior to being apprehended and placed in removal
28 proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are

subject to § 1225(b)(1), § 1226(c), or § 1231." (Doc. No. 1 at 15).  The Court agrees with Petitioner for the reasons discussed briefly below, as they have been exhaustively considered by district courts across the country.

This Court's analysis, however, is guided by principles of statutory interpretation.  The plain language of the statute is the starting point for its interpretation.  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989).  Fundamentally, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. United States Steel Corp.*, 571 U.S. 200, 227 (2014) (citation omitted).  But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2105).  Moreover, it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also Corley v. United States*, 556 U.S. 303, 314 (2009).  Relevant here, the Supreme Court recently stated that courts "must exercise independent judgment in determining the meaning of statutory provisions," and while the agency may provide guidance, the courts "may not defer to any agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 412 (2024).

Petitioner argues the plain language of § 1225(b)(2)(A) narrows its application from the "generic" "applicants for admission" to those aliens actively "seeking admission" to the United States.  (*Id*. at 10-11).  In contrast, Respondents argue the phrase "seeking admission" in § 1225(b)(2)(A) must be read "in the context" of the definition of "applicant for admission" in § 1225(a)(1), and, as such, both individuals present without admission and arriving aliens are "understood to be 'seeking admission' under § 1225(a)(1)." (Doc. No. 9 at 8 (citing *Matter of Lemus-Losa*, 25 I&N Dec. 734, 743 (BIA 2012)[3]).  Initially, courts considering the plain language

---

[3] Respondents rely on this 2012 BIA decision "recognizing" that "many people who are not actually requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." (Doc. No. 9 at 7 (citing *Matter of Lemus-Losa*, 25 I&N Dec. 734, 743 (BIA 2012)).  As an initial matter, because "agencies have no special competence in

of this statute have almost universally found that the phrase "seeking admission" necessarily entails some type of action taken to obtain entry or apply for status. *See, e.g., Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489-90 (S.D.N.Y. 2025) ("This understanding accords with the plain, ordinary meaning of the words 'seeking' and 'admission.' For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there."); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025). The Court is persuaded by this analysis.  During the 20 years he lived in the United States prior to his arrest and detention, Petitioner did not take any affirmative step to seek admission or a change in his immigration status; thus, the mandatory detention provision of § 1225(b)(2)(A) does not apply to Petitioner regardless of whether he is properly defined as an "applicant for admission."

Respondent contends that Petitioner's interpretation fails when considered under canons of statutory construction as it attempts to read "applicant for admission" out of § 1225(b)(2)(A). (*Id*. at 8 (citing *Corley*, 556 U.S. at 314 (a "statute should be construed so that effect is given to

---

resolving statutory ambiguities," "the BIA decision is entitled to little deference." *Salcedo Aceros*, 2025 WL 2637503, at *9 (quoting *Loper*, 603 U.S. at 400)).  Moreover, *Matter of Lemus-Losa* concerned a noncitizen residing in the United States who initially entered the United States without inspection, departed, then reentered the country and affirmatively applying for an adjustment of status to be admitted as a lawful permanent resident, and in that context the BIA "explicitly distinguishes 'applicant from admission' from 'seeking admission.'" *See Mosqueda v. Noem*, 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025) (citing *Matter of Lemus-Losa* at 744) ("in some cases such an alien will have reentered the United States unlawfully, thereby making himself an 'applicant for admission' by operation of law, while *seeking 'admission' through adjustment of status*.") (emphasis added); see also Rodriguez v. Bostock, 2025 WL 2782499, at *20 (W.D. Wash. Sept. 30, 2025).

10

all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). Ironically, Respondents appear to invite this Court to read "seeking admission" out of § 1225(b)(2)(A) by arguing, without citation to precedential authority, that it "must be read in the context" of the definition of applicants for admission in § 1225(a)(1), as individuals present without admission and arriving aliens are "understood to be 'seeking admission' under § 1225(a)(1)." (Doc. No. 9 at 8). This interpretation would certainly run counter to the rule against surplusage. *See, e.g., Martinez v. Hyde*, 791 F. Supp. 3d at 218 (D. Mass. 2025) ("Respondents' selective reading of the statute – which ignores its 'seeking admission' language – violates the rule against surplusage and negates the plain meaning of the text."); *Lopez v. Warden, Otay Mesa Det. Ctr.*, 2025 WL 3005346 (S.D. Cal. Oct. 27, 2025) ("Respondents' interpretation of 'seeking admission' as used in the mandatory detention provision of Section 1225(b)(2)(A) would seemingly render the phrase mere surplusage, such that the language could be deleted while retaining the same statutory meaning."). "The more apt interpretation in alignment with the canon must, instead, account for 'seeking admission' as an additional requirement to those identified as 'applicants for admission.'" *Calel v. Larose*, 2025 WL 3171898, at *5 (S.D. Cal. Nov. 13, 2025). Here, Respondents offer no argument or evidence that Petitioner was seeking admission *in addition to* meeting the criteria for "applicant for admission" under § 1225(a)(1).

Respondents' proposed interpretation also disregards the relationship within the INA between § 1225 and § 1226. First, § 1225 governs "inspection" of "arriving aliens," while § 1226 focuses on the "apprehension and detention of aliens." The interplay between these provisions was summarized by the Supreme Court in *Jennings* as follows: "[t]o implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. … In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 286-89, *see also id*. at 303 ("§ 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for

their arrest and detention pending removal proceedings."); *Romero v. Hyde*, 2025 WL 2403827, at *12-13 (D. Mass. Aug. 19, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (noting the distinction between "persons inside the United States and persons outside the United States" "is consistent with the long history of our immigration laws and with the Constitution."). Thus, Petitioner is more aptly characterized as an alien "already in the country," albeit without legal status, and should therefore be detained under § 1226(a).

Second, as described above, the 2025 amendment to § 1226(c) under the Laken Riley Act, added subsection § 1226(c)(1)(E) to require mandatory detention for those inadmissible under §§ 1182(a)(6)(A) (aliens present in the United States without being admitted or paroled, like Petitioner), (6)(C), or (7) *and* charged with, arrested for, convicted of, or admitting to certain crimes. § 1226(c)(1)(E). If, as argued by Respondents, all "applicants for admission," including those already present in the country and then deemed inadmissible, are already subject to mandatory detention under § 1225(b)(2)(A), it would be unnecessary to pass an amendment requiring mandatory detention for those applicants who were also charged with certain crimes. *See, e.g., Escobar Salgado*, 2025 WL 3205356, at *13. "Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected." *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Based on the foregoing, giving effect to every word in § 1225(b)(2)(A) in accordance with their ordinary meaning, and considered in context with § 1226 and the overall statutory scheme, Respondents' new statutory interpretation of § 1225(b)(2), and the application of § 1225(b)(2)(A) to Petitioner, is in violation of the INA. "Legislative history, congressional intent, and historical context is relevant to confirm textual analysis." *See Escobar Salgado*, 2025 WL 3205356, at *11 (citing *Biden v. Texas*, 597 U.S. 785, 804 (2022)); *see also Loper Bright*, 603 U.S. at 386 (2024) ("The longstanding practice of the government – like any other interpretive aid – can inform [a

court's] determination of what the law is.") (internal quotations omitted).  To the extent not discussed *supra*, in the interests of efficiency, the Court relies on the analysis of these factors by numerous district courts as further support that uninspected aliens residing long term in the United States without seeking admission, like Petitioner, are subject to detention under § 1226(a), and mandatory detention of those individuals under § 1225(b)(2)(A) as recently interpreted by Respondent, is unlawful.  *See, e.g., id*. at *17-20; *Maldonado*, 795 F. Supp. 3d at 1150; *Salcedo Aceros*, 2025 WL 2637503, at *11-12; *Gomez v. Doe*, 2025 WL 3269886, at * (D. Ariz. Nov. 3, 2025) (collecting cases).

Finally, while not binding on this Court, it is noteworthy that district courts considering this issue across the country, including in the Eastern District of California, have almost uniformly rejected Respondents' argument that all noncitizens who entered the United States without inspection and have lived in the United States for years or decades are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); instead, that category of noncitizen is subject to detention under § 1226(a).  *Moreno Vergel v. Chestnut*, 2026 WL 32848, at *3 (E.D. Cal. Jan. 6, 2026) (collecting cases in the Eastern District of California); *Aquino v. LaRose*, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *8, n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Echevarria v. Bondi*, 2025 WL 2821282, at *7 (D. Ariz. Oct. 3, 2025) (collecting cases); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory

claim, but also noting the finding "should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (§ 1225(b)(2)(A) applies to an alien who is physically present in the United Sates but not lawfully admitted, regardless of how long they have been physically present here."); *Alves de Andrade v. Patterson*, 2025 WL 3252707 (W.D. La. Nov. 21, 2025).

For all of these reasons, the Court concludes that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A); rather, his detention is governed by the discretionary framework of § 1226(a).

### D. Claim Two: Due Process

Petitioner also argues his detention without a bond redetermination hearing violates his Fifth Amendment right to due process. (Doc. No. 1 at 15-16). In light of the findings *supra* that mandatory detention of Petitioner under § 1225(b)(2)(A) is unlawful and Petitioner's detention is properly governed by § 1226(a), the Court declines to consider the merits of Petitioner's due process claim. Should Petitioner not be granted a bond hearing or released within the time ordered, Petitioner may renew his due process claim.

Accordingly, it is hereby **RECOMMENDED:**

1. Respondent's Motion to Dismiss (Doc. No. 9) be DENIED.
2. The Petition for Writ of Habeas Corpus (Doc. No. 1) be GRANTED in part

It is **further RECOMMENDED**:

1. If the district court adopts these Findings and Recommendations, the district court direct that within seven (7) days of its Order, Respondents be directed to either (1) provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a), or (2) release Petitioner under reasonable conditions of supervision.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written

objections with the Court. *Id*.; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     January 9, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE